WELSH, Admr, Etc v MT CALVARY'S ROMAN CATHOLIC CEMETERY et

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 3, 1933

**316**

Nathan M. Kaufman, Youngstown, for plaintiff in error.

Charles Koonce, Jr., Youngstown, for defendants in error.

## OPINION

By ROBERTS, J.

It is not claimed, it will be observed, that this accident was the result of any direct positive force put in motion by this stone whereby it was caused to fall off from the base, with the result before mentioned, but it is the contention of the plaintiff that as the managers of this cemetery these defendants owed a duty to the public, including this little girl, to keep and maintain the conditions in this cemetery, particularly this monument, in a reasonably safe condition, and that this duty was neglected and not observed. It is not claimed further that the managers of this cemetery knew of any dangerous or improper condition in this monument, but narrowed down to the final proposition, so far as this immediate subject is concerned, it is claimed that the negligence of the board of managers consisted in not exercising proper care to the end that this defective condition with such care should have been observed and conditions changed, with the result that the conditions complained of would have ceased to exist. The falling of the monument itself presents a strange situation or condition. It is not fully explained or understood from the evidence in the case.

The die to this monument was some three and a half feet high, and rested upon

a stone base considerably longer and wider than the die, and in addition to that which is usually done in placing a die metal Dowell pins had been inserted several inches into the die and several inches into the base, which were of considerable size. The stone in falling disclosed a fresh break in one of these metal Dowell pins and a bending of the other sufficient to allow the stone to tilt over and fall. It is strange that this stone should have fallen at this precise moment. There was some suggestion that perhaps the little girl and her brother were playing about this stone and exerted some force by which it was pulled toward and fell upon the girl. Even if that were true, it would not relieve the situation from apparent negligence so far as the condition of the stone must necessarily have been, because a little girl of this age could not have pulled a stone of this weight and size, properly set and braced, upon her.

There is no evidence upon the part of the plaintiff as to the condition of this monument previous to the accident. The principal testimony concerning what was observable in the situation the next day is testified to by the father of the plaintiff on this occasion, and he says that the base was tilted to the| extent that the side toward the other monument, that is, the direction in which the die fell, was perhaps an inch and a half or two inches lower than the other side, which if true would tend to indicate a tilting of the die until it lost its equilibrium and fell.

This was a pleasant evening, without wind blowing or anything else discoverable which would cause the stone to fall. The evidence is unsatisfactory in some respects. It does not disclose what the conditions were underneath this base, whether or not that base was set upon a concrete block, as is now the practice, or what, if anything except the earth, it rested upon. There is considerable testimony, particularly upon the part of the defendant below, concerning the conditions as discovered the next day. Several men testify that the base of this monument was level the next day after the accident; that it was not tilted, out of plumb. This same testimony by some of the witnesses further indicates that a short time after the base was discovered to have tilted in the direction of the other monument. Photographs were taken the next day. However, this court in examination of them would not feel a great assurance that an absolute and correct opinion could be found upon that subject by reason that photographs do not always indicate with certainty what such conditions were.

Considerable testimony was offered by the defendant concerning the condition of the monument. A witness by the name of Andrew Floch, another by the name of J. R. Talbott, Edward B. Scanlon and others testify. Mr. Floch testified, in effect, that he was employed at this cemetery for many years previous to and at the time of the accident, and that a day or two before the accident he trimmed the grass around this monument and that he observed nothing out of the ordinary in its appearance, and seems to have been of the opinion that if the stone had inclined in a direction out of the perpendicular that he would have observed it. He says it was standing straight up "because I had to work around it." This was, as is recalled, about two days before the accident. J. R. Talbott testified that he was sexton of the cemetery and had been such since April 1, 1915; that as such it was his duty to observe conditions in the cemetery; that he had observed this stone; that on the occasion of burials it was the custom to make an examination of surrounding conditions where the burial was about to take place, with the idea of discovering whether or not any conditions existed which might be dangerous or improper for a concourse of people which would presumably attend such burial, and that some two weeks earlier in the month of the accident he made an observation of this monument and others in the immediate vicinity of the place of a burial which was made at that time, and after giving considerable explicit testimony as to measurements which he made he testifies that he made this inspection within two or three days before the accident; that he observed nothing out of the ordinary so far as this monument was concerned, and in answer to a question says it was perfectly all right then, perfectly level and up right.

Edward B. Scanlon testified that he was superintendent of Calvary Cemetery and that as such he was familiar with the conditions and frequently made trips about the cemetery to determine its condition, and he had never discovered anything improper so far as this monument was concerned.

Several other witnesses testify, who were employes of the cemetery association. Examination of the testimony discloses no evidence on the part of the plaintiff of the condition of this monument preceding the night of the accident.

On the part of the defendant these witnesses, whose names have been mentioned, and others testify to the effect that the duty of this association in their employment was observed, care taken to become cognizant

of conditions to discover whether unsafe situations had developed, and that nothing had ever been discovered or known which would tend to indicate a suspicion that there was anything dangerous or improper about this monument or which might be anticipated to fall or cause an accident to anyone who might have occasion to be in the immediate vicinity of the stone. As was suggested a few moments ago, it is difficult to understand why this monument fell if the base was perpendicular, and the indications as observed by the pictures and the testimony it seems to be perhaps a necessary conclusion that this stone must have tilted, that the base must have been unsecure or some condition of this sort which allowed it, after standing there for some twenty years, to have fallen at this time. However, we must be governed by the evidence and the mere falling of the stone and the injury to the child, as before suggested, do not constitute a cause of action in the issue presented in this case, because it is not claimed that direct, active force was applied by these defendants whereby the stone was caused to fall, but all the negligence complained of is that they failed to observe conditions previous to the falling which ought to have been discovered and opportunity would thus have been afforded for removing the danger.

Some consideration has now been given to the evidence in this respect and this court fails to find from the evidence that there was any dereliction from duty on the part of those responsible for the conditions in this cemetery; that they were reasonably active and vigilant and the evidence does not, as a conclusion of this court, justify a finding that there was actionable negligence on their part in failing to acquire previous notice of the situation and previous dangerous condition.

Perhaps it may be mentioned that it is urged that as a matter of argument in brief in this case that the duty did not devolve upon the cemetery to exercise a duty in this respect, that Rule 31 of the organization provided that the duty was upon the owners of lots, but it is very apparent so far as that proposition is concerned, that the owner of a cemetery lot in the ordinary course of events would be buried on that lot and could not perform such duty. Such rule would be ineffective within a very short time, and we do not think that the managers would be excused by the promulgation of any such rule.

However, for the reasons stated, we find that a cause of action was not shown by the plaintiffs in the necessary manner

hereinbefore indicated, and the Court of Common Pleas did not err in finding for the defendant; that the judgment is not against the manifest weight of the evidence in this respect and the judgment of the Court of Common Pleas is affirmed.

The issues in this case were largely made up, aside from the charge of negligence, in a large number of defenses asserted by the answer of the defendant, and the argument and the elaborate briefs which have been presented, particularly upon the part of the plaintiff in error for a discussion of these affirmative defenses. It has not been considered necessary to enter upon a discussion or consideration of these defenses for the reason that the primary duty of the plaintiff to show a cause of action against the defendant was not sustained by the evidence.

Judgment affirmed.

FARR and POLLOCK, JJ, concur in the judgment.